AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas



FILED
U.S. District Court
District of Kansas

JAN 22 2019

Clerk, U.S. District Court
By_____ Deputy Clerk

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>627 N. Clay Avenue, Liberal, Kansas<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) | Case No.  19 - M - 6011 - 01 - KGG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

627 N. Clay Avenue, Liberal, Kansas, as further described in Attachment A,

located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized):*

evidence of violations of 18 U.S.C §§ 2252 and 2252A, as described in the Affidavit of Probable Cause and as further identified in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252 and 2252A | Certain activities related to material involving the sexual exploitation of minors/material constituting or containing child pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John V. Ferreira, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  Jan. 22, 2019

_____
*Judge's signature*

City and state:  Wichita, KS

The Honorable Kenneth G. Gale
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John V. Ferreira, a Special Agent (SA) with Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

### INTRODUCTION

1.        I have been employed as a Special Agent ("SA") of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") since 2004 and am currently assigned to the Kansas Internet Crimes Against Children Task Force (ICAC).  Previous to my employment with HSI, I was a state trooper/detective with the Arizona Department of Public Safety for nine (9) years. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography.  I have gained experience through training and everyday work relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

2.        This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the locations specifically described in **Attachment A** of this Affidavit, including the entire property located at **627 N. Clay Avenue, Liberal, Kansas** (the "SUBJECT PREMISES"), the content of electronic storage devices located therein, and any person located at the SUBJECT PREMISES, for contraband and

1

evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A, which items are more specifically described in **Attachment B** of this Affidavit.

3.      The statements in this Affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(1) (transportation of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252(a)(4)(B) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(1) (transportation of child pornography); and 18 U.S.C. § 2252A(a)(5)(B) (possession of and access with intent to view child pornography) are presently located at the SUBJECT PREMISES.

## DEFINITIONS

4.      The following definitions apply to this Affidavit and Attachment B:

a.      "Bing," as used herein, is a web search engine owned and operated by Microsoft. The service has its origins in Microsoft's previous search engines: MSN Search, Windows Live Search and later Live Search. Bing provides a variety of search services, including web, video, image and map search products.

b.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

2

c.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual

depiction, including any photograph, film, video, picture, or computer or computer-

generated image or picture, whether made or produced by electronic, mechanical or other

means, of sexually explicit conduct, where (a) the production of the visual depiction

involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction

is a digital image, computer image, or computer-generated image that is, or is

indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the

visual depiction has been created, adapted, or modified to appear that an identifiable

minor is engaged in sexually explicit conduct.

d.      "Computer," as used herein, refers to "an electronic, magnetic, optical,

electrochemical, or other high speed data processing device performing logical or storage

functions, and includes any data storage facility or communications facility directly

related to or operating in conjunction with such device" and includes smartphones, and

mobile phones and devices.  *See* 18 U.S.C. § 1030(e)(1).

e.      "Computer hardware," as used herein, consists of all equipment that can

receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit

electronic, magnetic, or similar computer impulses or data.  Computer hardware includes

any data-processing devices (including central processing units, internal and peripheral

storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash"

drives, which are small devices that are plugged into a port on the computer, and other

memory storage devices); peripheral input/output devices (including keyboards, printers,

video display monitors, and related communications devices such as cables and

connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

      f.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

      g.      "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

      h.      "Hyper Text Markup Language," or "HTML," as used herein, is a standard protocol for formatting and displaying documents, such as web pages, on the Internet.

      i.      An "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from

its source to its destination.  Most Internet Service Providers (ISPs) control a range of IP addresses.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

k.      The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

l.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

m.      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

n.      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-

genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality;
(c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the
genitals or pubic area of any person.

o.      A "storage medium" is any physical object upon which computer data
can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-
ROMs, and other magnetic or optical media.

p.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes
undeveloped film and videotape, data stored on computer disc or other electronic means
which is capable of conversion into a visual image, and data which is capable of
conversion into a visual image that has been transmitted by any means, whether or not
stored in a permanent format.

## PROBABLE CAUSE

5.      HSI, in conjunction with the Kansas Internet Crimes Against Children Task Force
(ICAC,) is conducting an investigation into the trafficking of child pornography by a person
residing at 627 N. Clay Avenue, Liberal, Kansas.

6.      On July 5, 2018, Wichita Police Department (WPD) Detective Heather Huhman,
who is a member of ICAC, was assigned a series of CyberTip reports, including #32716476,
which had been submitted to the National Center for Missing and Exploited Children (NCMEC)
by Microsoft. CyberTip #32716476 showed approximately 283 additional associated/subordinate
reports linked to it. These CyberTips were linked together because they all shared the same
upload internet protocol (IP) address of 162.201.238.48.

7.      All the submitted CyberTips were submitted by Microsoft and the reports indicated child exploitation images were uploaded through one of the many Microsoft services, known as "Bing Image". Bing Image enables the user to quickly search for, and display, relevant photos and images of interest. The advance filters allow refining search results in terms of properties.

8.      There is more than one way in which a person utilizing Microsoft might be reported to NCMEC and a variety of information about that user can also be reported, dependent upon how their site is being utilized by a user. Microsoft's Security Team provides the following examples as way a user might be reported for uploading possible child exploitive imagery: 1/the user drops an image into the search box using Bing's engine search, 2/the user searched a URL, or 3/the user utilized a third-party plugin search. In instances where uploads of child exploitive imagery are captured by Microsoft and being reported, the IP address along with the date and time of the upload of the files is submitted to NCMEC generating a CyberTip report for investigators.

9.      Microsoft, like many other Electronic Service Providers, rely upon technology to assist them in combating the exploitation of children. The use of PhotoDNA technology is paramount in this endeavor. Microsoft's PhotoDNA technology is a free service that helps identify, report, and remove child exploitive imagery. The development of PhotoDNA began in 2009, when Microsoft partnered with Dartmouth College to find a way to identify the same images of sexually abused children, which were continually being circulated over the internet.

10.     Microsoft's PhotoDNA utilizes the "hash value" of an image to identify such images as having previously been located, viewed, and identified as "child exploitive imagery".

It works by converting images into a grayscale format, creating a grid, and assigning a numerical value to each tiny square.  Those numerical values represent the "hash value" of the image, or its "PhotoDNA signature".  The program protects a user's privacy by matching a numerical hash value assigned to a photograph against a database of known, illegal images, previously recognized and documented.  When a user uploads an image, the hash value of the uploaded image is compared to the database of previously identified illegal images, and the electronic service provider captures specific information about that user, in regard to the specific upload. The captured information is forwarded to NCMEC, who distributes a CyberTip report to the most appropriate geographical region for investigators.

11.     Upon receiving the first bundle of assigned CyberTips, Detective Huhman reviewed a number of the uploaded images submitted within the Microsoft reports, which Microsoft indicated it had reviewed in its CyberTip report. Detective Huhman observed child exploitive images which depicted female and male children in states of nudity, some who were engaged in sex acts.  Over the course of the investigation, Detective Huhman compiled over 650 reports from the same target IP address that she received in batches. She reviewed files from each batch of reports.

12.     When reviewing each image, Detective Huhman created an excel spreadsheet also documenting the MD5 hash value of each uploaded image from IP 162.201.238.48.  Every uploaded image submitted by Microsoft was child exploitive imagery.  Some of the images repeated, indicating they were uploaded more than once and reported.  Detective Huhman recognized several as "known series" images, meaning that the images are from a series of pictures of the same child or children and were previously reported to NCMEC. Detective

8

Huhman recognized several images depicted a female child identified from the "Blue Pillow" series, which was confirmed by NCMEC on December 12, 2018.

13.     Detective Huhman observed many of the images depicted juvenile females under the age of 10; however, there were also multiple images of juvenile male children being exploited.  Many of the images depict child victims engaged in sexual acts. Some depict the child victims in various forms of bondage, such as handcuffs, ropes, leashes and collars. The children depicted are in various states of nudity and sexually provocative positions. The following are examples of images submitted, all of which Microsoft indicated it had reviewed as part of its reporting process:

a. CyberTip 32708696:  May 17, 2018 at 16:40:07 UTC MD5 Hash Value: 985EEA8B5D18D5F49EC73E42A76CC48C depicts a 2 to 4-year-old male child whose genitals are exposed. The child has bondage items around his legs. Microsoft identified this as an A2 category, prepubescent child in a state of nudity and restraint.

b. CyberTip 34163247:  June 6, 2018 at 19:48:08 UTC MD5 Hash Value: FD5592560C4743181CB145F9F6C334F4 depicts a nude female under the age of 13 positioned on top of an adult male, who appears to be nude. The adult male is kissing the child and has his arm wrapped around her with his hand placed behind her head. The two are located inside a vehicle. Microsoft identified this as an A1 category, prepubescent child engaged in a sex act.

c. CyberTip 41570175:  October 12, 2018 at 16:48:10 UTC MD5 Hash Value: 04ABE0C1AC93E61223F0E39E4A04A58C depicts a nude female child, who appears to be under the age of 3, and an unknown male. The male appears to be sticking his penis

into the buttocks and vaginal area of the female child. Microsoft identified this as an A1 category, prepubescent child engaged in a sex act.

   d.   CyberTip 43730665:  November 30, 2018 at 20:48:58 UTC MD5 Hash Value:

        B1410285D6D147738A2300AE9575C207 depicts an approximately 5-7-year-old female

        holding a pink piece of paper that has handwritten, "I (a heart shape) cum." An unknown

        male has placed his penis into the child victim's mouth. Microsoft identified this as an A1

        category, prepubescent child engaged in a sex act.

    14.    A query of the American Registry for Internet Numbers ("ARIN") online database revealed that IP address 162.201.238.48 was registered to AT&T.

    15.    Utilizing the dates between May 16, 2018 and June 27, 2018, the period of time observed for the majority of the reviewed uploads from the target IP, I obtained a federal summons for subscriber information related to the target IP address. Detective Huhman submitted the signed summons for compliance via the law enforcement email on July 18, 2018.

    16.    On July 23, 2018, Detective Huhman received the results regarding the subscriber and address of the target IP address, which was the address of the SUBJECT PREMISES: Larry Blaser, 627 N. Clay Avenue, Liberal, Kansas.

    17.    Open source and law enforcement records searches for Larry Blaser identified him as a white male born XX/XX/1963 with a Social Security number of XXX-XX-6050.  The address of 627 N. Clay Ave in Liberal was listed as an active address.  An Oklahoma driver's license with an address of RR1 Box 41B, Tyrone, Oklahoma was also located for Blaser.

    18.    Liberal Police Department officers drove by the SUBJECT PREMISES and observed a Chevrolet pickup truck parked at the residence. The vehicle was bearing an

Oklahoma license plate which returned to Flat Prairie Farms, RR1 Box 41B, Tyrone, Oklahoma, which is the same address listed on Larry Blaser's driver's license.

19.     In addition, a Liberal Police officer used his cellular wireless device in an effort to gain additional information regarding any potential wireless networks at the SUBJECT PREMISES.  Positioned in proximity of the SUBJECT PREMISES, the officer noted there were multiple wireless networks in the area, but all of them were secured.  Accordingly, to use any of them to access the Internet, a user would likely have to know the encryption key or password for that particular network. Based on the signal strength of the wireless networks, as well as my training and experience and information relayed to me by agents, I believe that the wireless router at the SUBJECT PREMISES is likely generating a secured wireless network. I know, from my training and experience that wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime.

20.     From the initial submissions in mid-July 2018 to new reports in January 2019, Detective Huhman compiled over 650 reports, all showing the same IP address of 162.201.238.48 possessing and distributing images of child pornography through the Bing Image platform.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

21.     I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience, and knowledge, I know the following:

    a.  Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other.  Computers basically

11

serve four functions in connection with child pornography:  production, communication, distribution, and storage.

b.  Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth."  Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards are often large enough to store thousands of high-resolution photographs or videos.

c.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections.  Electronic contact can be made to literally millions of computers around the world.  Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d.  The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer – can store thousands of images or videos at very high resolution.  It is extremely easy for an individual to take a photo or a video with a

digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

e.  The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.  Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g.  As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional. Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic

13

communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO ADVERTISE, TRANSPORT, DISTRIBUTE, RECEIVE, POSSESS, AND/OR ACCESS WITH INTENT TO VIEW CHILD PORNOGRAPHY

22.     Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who distribute, receive, and/or possess child pornography:

a.   Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.   Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.   Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines,

14

negatives, photographs, correspondence, mailing lists, books, tape recordings,

etc., in the privacy and security of their home or some other secure location.

Individuals who have a sexual interest in children or images of children typically

retain pictures, films, photographs, negatives, magazines, correspondence, books,

tape recordings, mailing lists, child erotica, and videotapes for many years.

d.   Likewise, such individuals often maintain their child pornography images in a

digital or electronic format in a safe, secure and private environment, such as a

computer and surrounding area.  These child pornography images are often

maintained for several years and are kept close by, usually at the possessor's

residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-

based online storage, to enable the individual to view the child pornography

images, which are valued highly.  Some of these individuals also have been found

to download, view, and then delete child pornography on their computers or

digital devices on a cyclical and repetitive basis.

e.   Importantly, evidence of such activity, including deleted child pornography, often

can be located on these individuals' computers and digital devices through the use

of forensic tools.  Indeed, the very nature of electronic storage means that

evidence of the crime is often still discoverable for extended periods of time even

after the individual "deleted" it.[1]

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010);

f.   Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses (including e-mail addresses), and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

g.   Such individuals prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if a suspect uses a portable device (such as a mobile phone) to access the Internet and child pornography, it is more likely than not that evidence of this access will be found in his home, the SUBJECT PREMISES, as set forth in Attachment A.

23.    Based on the following, I believe that the person residing at the SUBJECT PREMISES likely displays characteristics common to individuals who transport, distribute, receive, and/or possess child pornography. For example, the target of investigation has uploaded searches to BING for child pornography which indicates the user possessed and transported child pornography and maintained access to a library of child pornography.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

---

*United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

24.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found.  One form in which the records are likely to be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.     I submit that if a computer or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records referenced above will be stored on that computer or storage medium, for at least the following reasons:

a.   Deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

17

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.     As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the SUBJECT PREMISES because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers,

18

e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or

19

storage media was accessed or used.  For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the Internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping"

20

program to destroy evidence on the computer or password protecting/encrypting

such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after

examining this forensic evidence in its proper context, draw conclusions about

how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other

forms of forensic evidence on a storage medium that are necessary to draw an

accurate conclusion is a dynamic process.  While it is possible to specify in

advance the records to be sought, computer evidence is not always data that can

be merely reviewed by a review team and passed along to investigators.  Whether

data stored on a computer is evidence may depend on other information stored on

the computer and the application of knowledge about how a computer behaves.

Therefore, contextual information necessary to understand other evidence also

falls within the scope of the warrant.

e.   Further, in finding evidence of how a computer was used, the purpose of its use,

who used it, and when, sometimes it is necessary to establish that a particular

thing is not present on a storage medium.  For example, the presence or absence

of counter-forensic programs or anti-virus programs (and associated data) may be

relevant to establishing the user's intent.

f.   I know that when an individual uses a computer to obtain or access child

pornography, the individual's computer will generally serve both as an

instrumentality for committing the crime, and also as a storage medium for

evidence of the crime.  The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The computer is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

27.    Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage.  I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a.    Searching computer systems is a highly technical process that requires specific expertise and specialized equipment.  There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search.  In addition, it may also be necessary to consult with computer

22

personnel who have specific expertise in the type of computer, software, or operating system that is being searched;

b.  Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c.  The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d.  Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within

another seemingly unrelated and innocuous file in a process called
"steganography."  For example, by using steganography a computer user can
conceal text in an image file which cannot be viewed when the image file is
opened.  Therefore, a substantial amount of time is necessary to extract and sort
through data that is concealed or encrypted to determine whether it is contraband,
evidence, fruits, or instrumentalities of a crime.

28.     Additionally, based upon my training and experience and information relayed to
me by agents and others involved in the forensic examination of computers, I know that routers,
modems, and network equipment used to connect computers to the Internet often provide
valuable evidence of, and are instrumentalities of, a crime.  This is equally true of wireless
routers, which create localized networks that allow individuals to connect to the Internet
wirelessly.  Though wireless networks may be secured (in that they require an individual to enter
an alphanumeric key or password before gaining access to the network) or unsecured (in that an
individual may access the wireless network without a key or password), wireless routers for both
secured and unsecured wireless networks may yield significant evidence of, or serve as
instrumentalities of, a crime—including, for example, serving as the instrument through which
the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing
logging information regarding the time and date of a perpetrator's network activity as well as
identifying information for the specific device(s) the perpetrator used to access the network.
Moreover, I know that individuals who have set up either a secured or unsecured wireless
network in their residence are often among the primary users of that wireless network.

29.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## REQUEST FOR SEALING

30.     It is respectfully requested that this Court issue an order sealing, until further order of this Court, all papers submitted in support of this Application, including the Application, Affidavit, and Search Warrant, and the requisite inventory notice (with the exception of one copy of the warrant and the inventory notice that will be left at the SUBJECT PREMISES).  Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation and not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through forums.  Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on this continuing investigation and may jeopardize its effectiveness by alerting potential targets to the existence and nature of the investigation, thereby giving them an opportunity to flee or to destroy or tamper with evidence.

## CONCLUSION

31.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the locations described in Attachment A.  I respectfully request that this Court issue a search warrant for the locations described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

32.     I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.  For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises.  Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

John V. Ferreira
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this 22ᵈ day of JAN., 2019.

KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

26

## ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

The entire property located at **627 N. Clay Avenue, Liberal, Kansas** including the residential building, any outbuildings, and any appurtenances thereto (the SUBJECT PREMISES). The property is a single-story residence located within a multiplex. The multiplex has a red brick front and has a different door to each residence. The residence to be searched has a white screen door with number "27" affixed to it and is the second door from the right.



## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252 and 2252A:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

28

    d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

    e.   evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

    f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.   evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

    h.   evidence of the times the COMPUTER was used;

    i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.   records of or information about Internet Protocol addresses used by the COMPUTER;

    l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.   contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography, as defined in 18 U.S.C. § 2256(8), and child erotica.

5. Records, information, and items relating to violations of the statutes described above including:

  a. Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES, **627 N. Clay Avenue, Liberal, Kansas,** including utility and telephone bills, mail envelopes, or addressed correspondence;

  b. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

  c. Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

  d. Records and information relating to the sexual exploitation of children, including correspondence and communications between users of the website referenced in the Search Warrant Application;

  e. Records and information showing access to and/or use of the website referenced in the Search Warrant Application; and

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

30

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.